IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRENT RENNER,

                Plaintiff,                Case No. 3:10 CV 2085

  -vs-

                                        MEMORANDUM OPINION

FORD MOTOR COMPANY,

                Defendant.

KATZ, J.

This matter is before the Court on Defendants' Motions for Summary Judgment (Doc. Nos. 40, 42). The Court notes federal question jurisdiction under 28 U.S.C. §1331 and proper venue under 28 U.S.C. §1391. For the reasons stated below, Defendants' motions will be granted.

## I. BACKGROUND

Plaintiff Trent Renner works for Defendant Ford Motor Company ("Ford") in a plant in Lima, Ohio. That plant is represented by both Defendant Local 1219, United Automobile Aerospace and Agricultural Implement Workers of America ("Local 1219") and Defendant International Union, United Automobile Aerospace and Agricultural Implement Workers of America ("International," collectively "the Union"). Ford and the Union have agreed to a collective bargaining agreement ("CBA").

Though he is originally from the Lima area, and his father has been a union official for the Local 1219 at the Lima plant, when Ford first hired Plaintiff in 1999, he had to take a position at Ford's Sharonville, Ohio Transmission Plant. This plant is two hours away from Plaintiff's home in Lima. As soon as he was hired, Plaintiff began requesting transfer to Lima. Plaintiff also claims that Brett Fox, a Union official and friend of his father, promised that transfer would come within three to six months. Plaintiff was not able to move to Lima until 2006.

The CBA contemplates two kinds of seniority: company seniority related to benefits (not at issue here) and plant seniority, which is used, *inter alia*, to determine layoffs.  If an employee never changes plants, the two will be the same.  However, in some cases, if an employee moves from one plant to another, that employee will have to take plant seniority starting not on date of hire with Ford, but the date of entry at the particular plant.  Plaintiff's case arises from a controversy surrounding his transfer and whether he should have had his company seniority as his plant seniority at the Lima plant.

Plaintiff's 2006 transfer came about through the work of Brett Fox.  He was attempting to help Shawn Paradore, another Union official's son working at a plant near Sharonville.  Paradore apparently needed an immanent transfer and was otherwise in danger of losing his job.  Fox knew of Plaintiff's desire to transfer as well, and that Plaintiff had been commuting two hours each way from Lima to Sharonville.  Finally, Fox knew that Ford was preparing a restructuring which might allow Plaintiff and Paradore to transfer to Lima with their company seniority as their plant seniority.  However, he determined that the transfers could not wait and worked out an arrangement with a Ford official.

Plaintiff claims that he was never told that his seniority was in question (and interprets certain representations as affirming that he would transfer his company seniority to Lima). Yet, he immediately encountered resistance from fellow employees at Lima.  They questioned not only his ability to transfer his seniority, but also the propriety of any transfer: the Lima plant had no openings or postings for transfer at that time.  As a result, then Local 1219 Chairman Dan Hinegardner told Union members that Renner and Paradore did not transfer with company seniority and would thus be last on the list of plant seniority.  Plaintiff confronted Hinegardner and

2

was assured that the seniority would be adjusted when conditions in the plant changed. Hinegardner filed grievances requesting this adjustment, but they sat in limbo for three years. During those three years, Plaintiff encountered no difficulty due to his seniority. Further, Plaintiff acknowledged that his plant seniority during that time was posted in the plant as his date of transfer, rather than his date of hire with Ford.

In early 2009, Ford determined that it would have to put several employees at the Lima plant on indefinite layoff. When it seemed as though Plaintiff would be part of this layoff (and he was for approximately two weeks) his grievance was revived. Pursuant to the agreement originally worked out by Fox, Ford agreed to adjust the seniority dates of Plaintiff and Paradore as part of their "hardship" transfers. As a result, Plaintiff passed over seventy of his coworkers, bumping one onto layoff status, and returned to work before the end of the layoff. Plaintiff deemed the matter settled at this point.

One of the coworkers passed, though not the coworker bumped, was Jeremi Brayton. Like Plaintiff, Brayton had transferred to the Lima plant from another Ford plant at a time when the Lima plant was not accepting transfers. His plant seniority was set as his date of arrival at Lima, not his date of hire with Ford. He arrived at the Lima plant before Plaintiff, but after Ford hired Plaintiff, and originally hired with Ford earlier than Plaintiff. Brayton could not see the difference between his situation and Plaintiff's and filed a grievance in an attempt to receive the same treatment.

Also by this time, Hinegardner had left his position as Local 1219 Chairman and was replaced by Dan Weaver. Weaver was both less informed about and less sympathetic to Plaintiff's situation. He distributed a letter around the time of Plaintiff's layoff and return concerning an

intention to investigate Plaintiff's situation. In addition, all of the employees passed by Plaintiff and Paradore filed a group grievance.

Both the group grievance and Brayton's grievance were denied by Ford. Brayton attempted to take his grievance to the umpire provided by the CBA, but the Union decided to withdraw it. Brayton appealed this decision to the Unions's International Executive Board ("IEB"). That body dispatched an investigator who interviewed Plaintiff, among others. The IEB decided that Brayton was clearly not entitled to use his hire date for his plant seniority date. It also rejected the agreement under which Plaintiff and Paradore transferred their seniority due to "hardship" as not valid under the contract. Thus, the IEB ordered the reopening of their settled grievances to reflect the changed Union position and so that Plaintiff and Paradore be offered the choice of returning to Sharonville with plant seniority the same as company seniority or staying in Lima with plant seniority set at the date of transfer. Paradore went to Sharonville, Plaintiff stayed and was immediately subject to a new layoff.

Plaintiff brought this suit claiming that Ford violated the CBA in reversing his plant seniority pursuant to the IEB decision. He also claims that the Union violated the duty to represent him fairly.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility

of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'"

*Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) . The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. ANALYSIS

Though the parties disagree over some portions of Plaintiff's claims with regard to alleged differences between the Amended Complaint and argument in opposition to summary judgment, they do agree that the suit is a "hybrid § 301" suit, alleging breach of contract against Ford under § 301 of the Labor-Management Relations Act (29 U.S.C. § 185) and breach of duty of fair representation against the Union, as provided by the Supreme Court decision in *Vaca v. Sipes*, 386 U.S. 171 (1967). In such a suit, Plaintiff cannot recover from either labor or management unless he proves both breaches. *Bagsby v. Lewis Bros., Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987) (*citing Hines v. Anchor Motor Freight Co.*, 424 U.S. 554, 570-71 (1976)). Plaintiff bears the burden of demonstrating both breaches. *Ryan v. General Motors Corp.*, 929 F.2d 1105, 1109 (6th Cir. 1989).

In order to demonstrate a breach of the Union's duty of fair representation Plaintiff must show that the Union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at

6

190.  The Amended Complaint specifically refers to the decision to reverse the grievance disposition granting Plaintiff his company seniority at Lima, describing the decision as "arbitrary and capricious and [reflecting] a willingness to sacrifice plaintiff unnecessarily in order to accomplish goals of the Union."  Doc. No. 21 at 7.  First, "a union's actions are arbitrary only if ... the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."  *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 68 (1991) (*quoting Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)) (internal quotation omitted).  Second, the Union was entitled to "deference to larger Union interests [because] '[w]here the individual and collective group interests clash, the former must yield to the latter.'" *Milstead v. Int'l Bhd. Of Teamsters*, 580 F.2d 232, 236 (6th Cir. 1978) (*quoting Tedford v. Peabody Coal Co.*, 533 F.2d 952, 956-57 (5th Cir. 1976)); *see also Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010) ("Without more, merely alleging that a union's conduct favored one group over another does not constitute a breach of the duty of fair representation).  Plaintiff has not presented evidence that the Union behaved irrationally in favoring the CBA applicable to all members over his interests.  In fact, his references to the dissatisfaction of most of his coworkers with his transferred seniority actually provides further rationale for the Union's decision.  That the issue under consideration when the Union decided to reverse its position related to a different employee is of little import, especially in that Plaintiff's transferred seniority did, in fact, affect that employee because Plaintiff passed that employee in seniority.  Thus, Plaintiff's assertion that the Union breached the duty of fair representation by reversing the transfer of his seniority fails.

In attempting to prevent summary judgment on his claims, Plaintiff makes further claims concerning breaches of the duty of fair representation.  Ford complains about the addition of new

theories at this stage, but such arguments are moot since Plaintiff's new theories fare no better than the theory in his Amended Complaint.

Plaintiff's new theories shift from allegations of arbitrary conduct to claims of bad faith. In this context, the Sixth Circuit has recently held that bad faith requires a showing of "improper intent or motive." *Bowerman v. Int'l Union, United Automobile, Aerospace & Agric. Implement Workers of Am.*, 646 F.3d 360, 368 (6th Cir. 2011) (citation omitted). Similarly, a "union acts in 'bad faith' when 'it acts with an improper intent, purpose, or motive ... encompass[ing] fraud, dishonesty, and other intentionally misleading conduct.'" *Merritt*, 613 F.3d at 619 (*quoting Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)) (alteration in original). Plaintiff's first newly claimed breach by the Union involves the actions of Brett Fox and Dan Hinegardner, particularly where they attempted to facilitate Plaintiff's transfer and later seniority adjustment allegedly without keeping Plaintiff fully informed of their actions or the implications thereof. While Plaintiff asserts dishonesty in these actions, he admits that they were taken to help him, rather than harm. As such he presents no "improper intent, purpose, or motive" in these actions. Hence, they are not evidence of bad faith.

Next, Plaintiff points to the statements of Hinegardner and Dan Weaver, each as Chairman of the Local 1219 at the time of his particular statement, to the membership of the Local 1219 concerning Plaintiff's situation. Plaintiff claims further duplicity on his behalf with regard to Hinegardner's statement in 2006 (shortly after Plaintiff's arrival in Lima), but again fails to note any improper motive (instead claiming that Hinegardner was trying to keep the peace). In contrast, Plaintiff claims that the statement Weaver circulated in 2009 "to ignite the membership against [Plaintiff]" after he had been recalled from layoff due to the adjustment of his seniority.

Doc. No. 51 at 18. However, Plaintiff did nothing about this until filing this suit. The hybrid § 301 suit has a six month statute of limitations. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 803 (6th Cir. 1990) (*citing DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983)). Plaintiff correctly notes that his claim would not accrue until he actually or should have discovered his injury. *Id.* (*quoting Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 581 (6th Cir. 1987)). However, Plaintiff does not offer any evidence that he was not aware of Weaver's statement in 2009, more than six months before he filed this suit in September 2010. Plaintiff also implies that Weaver's statement had something to do with the filing of the group and Brayton grievances, but both predated Weaver's tenure as Chairman of the Local 1219.

Finally, Plaintiff complains of what he perceives as a lack of assistance in pursuing appeals following the reversal of his seniority and resistance to filing grievances. This claim suffers from his admission that he presented the Local 1219 with his appeal, sent a letter to the IEB with regard to the reversal of his seniority (the same body that had ordered the reversal), and has filed further grievances with regard to events concerning his seniority. Plaintiff has presented no proof of any detriment with regard to alleged bad faith Union behavior following the reversal of his seniority. Without such proof this argument does not present sufficient evidence for a jury to find in Plaintiff's favor.

Because Plaintiff has failed to present sufficient evidence of a breach of the duty of fair representation against the Union his claims asserting that Ford breached the CBA, whether supported by his Amended Complaint or not, are inconsequential. *Bagsby*, 820 F.2d at 801 ("Unless [Plaintiff] demonstrates *both* violations, he can not succeed against either party") (emphasis in original); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (6th

Cir. 2009) (Plaintiff can proceed in hybrid § 301 claim "only if he can also show that the union breached its duty of fair representation") (citations omitted). Therefore, Plaintiff's entire Amended Complaint fails and summary judgment is appropriate for all Defendants.

### IV. CONCLUSION

For the reasons discussed herein, Defendants' Motions for Summary Judgment (Doc. Nos. 40, 42) are granted. Case closed.

IT IS SO ORDERED.

                                         s/ *David A. Katz*
                                         DAVID A. KATZ
                                         U. S. DISTRICT JUDGE